UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIM VASQUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>ROCKLAND COUNTY,<br><br>        Defendant. | 15-CV-8912 (KMK)<br><br>OPINION & ORDER |

Appearances:

Kim Vasquez
Fishkill, NY
*Pro Se Plaintiff*

Ari Isaac Bauer, Esq.
Catania, Mahon, Milligram & Rider, PLLC
Newburgh, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Pro se Plaintiff Kim Vasquez ("Plaintiff"), currently an inmate at Downstate Correctional Facility, brings this Action under 42 U.S.C. § 1983 against Defendant Rockland County ("Defendant"). Plaintiff alleges that Defendant violated Plaintiff's rights under the First, Fifth, Eighth, Twelfth, and Fourteenth Amendments during the 10 days Plaintiff was incarcerated at Rockland County Jail. (*See* Am. Compl. 5 (Dkt. No. 6).) Specifically, Plaintiff alleges that he was sexually assaulted, denied a change of clothing, denied access to law library material, given inadequate medical treatment due to the falsification of medical records, and retaliated against when he attempted to file a grievance. (*Id.* at 3.) Before the Court is Defendant's Motion To Dismiss Plaintiff's Amended Complaint. (*See* Mot. To Dismiss (Dkt. No. 27).) For the following reasons, Defendant's Motion is granted.

I. Background

A. Factual Background

Plaintiff was first transferred to Rockland County Jail on June 23, 2015 and placed on precautionary watch, (*see* Am. Compl. 2), despite notifying the facility that he was not suicidal, (*id.*).[1] After being released from precautionary watch, Plaintiff was transferred to the A-Wing of the facility where he was subjected to a search by a correctional officer ("C.O."). (*Id.*) Plaintiff alleges that during the course of the search, he was ordered to remove his clothing and was "sexually groped by this C.O. in [Plaintiff's] private area." (*Id.* at 3.) Plaintiff requested to speak to a sergeant about being sexually assaulted. (*Id.*) While reporting the incident, the sergeant told Plaintiff to "stand up, be quiet, and turn around," (*id.*), and Plaintiff was then handcuffed and placed on suicide watch, (*id.*). Plaintiff alleges that some unidentified prison official "falsif[ied] [his] medical documents," (*id.* at 5), claiming that Plaintiff was "suicidal and that [he] [made] a prior attempt to injure [himself]," (*id.* at 3). Plaintiff asserts that the New York State Office of Mental Health "misdiagnosed" him because the "falsifying o[f] [his] psychological records . . . misle[]d" the medical staff. (*Id.*)

Plaintiff further asserts that during "the entire 10 days" he was at Rockland County Jail, he was "denied a second change of clothes," (*id.*), and that "everyday [he] was in [the] facility [he] requested access to law library material and was not provided with any," (*id.*). Plaintiff also alleges that during his time at Rockland County Jail, he "was denied [his] right to observe the month of Ramadan" and could not "pray[] and break[] . . . the fast for [his] Muslim religion." (*Id.*) Plaintiff further avers that "[he] was . . . [not] permitted to submit grievances," (*id.*), and

---

[1] According to Plaintiff, Rockland County Jail policy dictates that inmates "must be on suicidal watch before they are placed on precautionary watch." (Am. Compl. 2.)

that he was retaliated against for "attempting to inform" prison officials about the alleged abuses, (*id.*). Plaintiff requests relief "i[n] the form of monetary compensation in the dollar amount of one quabillion dollars U.S. currency." (*Id.* at 5.)

### B. Procedural History

Plaintiff filed his original Complaint against the Rockland County Sherriff's Department on November 12, 2015. (Dkt. No. 2.) On December 14, 2015, Plaintiff's request to proceed in forma pauperis was granted. (Dkt. No. 4.) On January 20, 2016, then-Chief Judge Loretta A. Preska issued an Order To Amend, dismissing five out of six of Plaintiff's asserted claims as duplicative of those asserted in other pending actions. (*See* Order To Amend 2–6 (Dkt. No. 5).)[2] As to Plaintiff's remaining claim, Judge Preska liberally construed Plaintiff's Complaint "as raising First Amendment retaliation, access-to-courts, and free exercise claims." (*Id.* at 9.) The Order To Amend stated that Plaintiff had "not provided sufficient facts to state a claim on any of these bases," (*id.*), but granted Plaintiff "an opportunity to amend [his] complaint to address the deficiencies" identified, (*id.* at 12). The Order To Amend instructed Plaintiff to:

   a) give the names and titles of all relevant persons;
   b) describe all relevant events, stating the facts that support Plaintiff's case[,] including what each defendant did or failed to do;
   c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;
   d) give the location where each relevant event occurred;
   e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and
   f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

---

[2] Plaintiff's case was initially assigned to then-Chief Judge Preska. On March 17, 2016, Plaintiff's case was reassigned to this Court. (*See* Dkt. (minute entry for Mar. 17, 2016).)

(*Id.* at 13–14.)  The Order to Amend further provided that "[e]ach individual defendant must be named in the caption" and that "[a]ny defendants named in the caption must also be discussed in Plaintiff's statement of claim."  (*Id.* at 13 n.7.)  The Order also stated that "[i]f Plaintiff does not know the name of a defendant, he may refer to that individual as 'John Doe' or 'Jane Doe' in both the caption and the body of the amended complaint."  (*Id.* at 13.)

Plaintiff filed his Amended Complaint on February 4, 2016.  (Dkt. No. 6.)  Defendant filed the instant Motion To Dismiss and accompanying memorandum of law on July 21, 2016.  (Mem. of Law in Supp. of Mot. To Dismiss on Behalf of Def. Rockland Cty. ("Def.'s Mem.") (Dkt. No. 29).)  Plaintiff did not file a response.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Because Plaintiff is proceeding pro se, the Court construes his "submissions . . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation

marks omitted). Furthermore, for the same reason, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted).

>    B.  Analysis

>>    1. *Monell* Liability

Defendant seeks to dismiss Plaintiff's Complaint against it on the ground that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 for municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against government agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"),

*adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010). The fifth element—that an official policy of the municipality caused the constitutional injury—reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy,

which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue."); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of

liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

Plaintiff has not identified any formal policy or informal custom of Defendant that caused his alleged injuries, nor has he suggested that individuals responsible for establishing municipal policies caused his deprivation, or that employees were improperly trained. Plaintiff's only allegation that could be construed as asserting a violation under *Monell* is that "right denial is very common when it involves Muslim[s]." (Am. Compl. 3.) Yet, Plaintiff offers no examples of Rockland County officials violating the rights of Muslims or any policy that discriminates against Muslims. Thus, Plaintiff has failed to state a claim against Defendant Rockland County pursuant to *Monell*. *See City of Canton*, 489 U.S. at 385 (noting that there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *see Adams v. Orange County*, No. 13-CV-8549, 2015 WL 5459794, at *5 (S.D.N.Y. Sept. 1, 2015) (dismissing the plaintiff's *Monell* claims as "entirely conclusory" because he "ha[d] not identified any specific municipal policy or custom that caused his injuries or provided any allegations supporting a plausible inference of a pattern and practice through a failure to train or supervise."); *Davis v. City of New York*, No. 07-CV-1395, 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) ("[C]onclusory allegations that a municipality failed to train and supervise its employees is insufficient to state a *Monell* claim.").

    2. Retaliation Claim

Plaintiff also alleges that Defendant retaliated against Plaintiff by placing him on suicide watch as a result of his "attempting to inform" prison officials of the purported abuses, (*see* Am.

Compl. 3), and that Plaintiff's grievances were "rejected" and "given back to [him]," (*id.* at 3, 4). Defendant contends that Plaintiff has "failed to identify any prison official in the body of the Amended Complaint . . . who [P]laintiff is claiming took any adverse action against him," (Def.'s Mem. 10), and that "[P]laintiff's generalized allegations that he was assaulted . . . in retaliation [for] [his] attempt to inform . . . [are] unintelligible on [their] face and [are] utterly insufficient to sufficiently allege facts establishing any causal connection between the alleged adverse action and protected conduct," (*id.* (alteration and internal quotation marks omitted)). The Court interprets these allegations as raising a retaliation claim under the First Amendment.

To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant took adverse action against . . . [him], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same). "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (internal quotation marks omitted)).

Here, Defendant does not dispute that Plaintiff has adequately alleged that he engaged in constitutionally protected activity based on his assertion that he attempted to "submit

10

grievances." (Am. Compl. 3.) "The filing of lawsuits or prison grievances is a constitutionally protected activity." *Houston v. Zen Zen*, 388 F. Supp. 2d 172, 174 (W.D.N.Y. 2005); *see also Dolan*, 794 F.3d at 294 ("[I]t is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" (quoting *Graham*, 89 F.3d at 80)); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a grievance" and "the filing of a lawsuit" are "constitutionally protected activit[ies]").

Although Plaintiff has adequately alleged that he engaged in protected conduct, he has failed to allege which employee of Defendant took an "adverse action" against him in retaliation for that conduct. An action qualifies as an "adverse action" for purposes of a retaliation claim only if the action would "deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004); *see also Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *9 (S.D.N.Y. Sept. 13, 2013) (same). It is unclear whether placing Plaintiff on suicide watch rises to such a level. Even assuming it does, however, Plaintiff has not alleged sufficient facts showing "a causal connection between the protected conduct and the adverse action." *Holland*, 758 F.3d at 225 (alteration and internal quotation marks omitted). Plaintiff does not allege that individuals involved in the decision to place him on suicide watch were aware of Plaintiff's grievance, let alone named in that grievance. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was a complaint about a prior incident by another correctional officer); *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *10 (S.D.N.Y. Feb. 23, 2015) ("Absent evidence

11

that any defendant knew about his . . . grievance, [the plaintiff] has failed to provide any basis to believe that they retaliated against him for a grievance in which they were not named."), *adopted in relevant part by* 2015 WL 4476027 (S.D.N.Y. July 22, 2015); *Jones v. Fischer*, No. 10-CV-1331, 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (dismissing the plaintiff's retaliation claims and noting such claims "have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (finding the plaintiff failed to provide any basis to believe that a defendant would retaliate for a grievance in which the defendant was not named and of which he was unaware); *see also Alston v. Pafumi*, No. 09-CV-1978, 2016 WL 81785, at *7 (D. Conn. Jan. 7, 2016) (granting partial summary judgment where the plaintiff identified "no record evidence from which a reasonable jury could infer that any other defendant was aware of [the plaintiff's] complaints"), *clarifying on denial of reconsideration*, 2016 WL 447423 (D. Conn. Feb. 4, 2016).  Accordingly, Plaintiff has failed to state a claim for retaliatory action in violation of his First Amendment rights.

### 3. Denial of Access to the Courts

Plaintiff alleges that "everyday [he] was in [Rockland County Jail] [he] requested access to law library material and was not provided with any."  (Am. Compl. 3.)  In response, Defendant asserts that Plaintiff's access-to-courts claim must be dismissed as a matter of law.  (*See* Def.'s Mem. 11.)

"Prisoners . . . have a constitutional right of access to the courts." *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted).  However, impairment of an inmate's "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Pollack v. Holanchock*, No. 10-CV-2402, 2012

WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (internal quotation marks omitted). "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted); *see also Smith v. City of New York*, No. 14-CV-443, 2015 WL 1433321, at *3 (S.D.N.Y. Mar. 30, 2015) (same).

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (internal quotation marks omitted); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, i.e., took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alteration, italics, citation, and internal quotation marks omitted)).

To make good a claim of injury, a plaintiff must plausibly allege "that a nonfrivolous legal claim had been frustrated or was being impeded due to the actions of prison officials." *Williams v. Superintendent of Brooklyn Det. Ctr.*, No. 15-CV-6085, 2015 WL 7281646, at *2 (E.D.N.Y. Nov. 17, 2015); *see also Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5970355, at *12 (S.D.N.Y. Oct. 13, 2015) (finding a plaintiff must "demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." (internal quotation marks omitted)). For example, a plaintiff could show that he "has been unable to file a complaint or [has] had a complaint dismissed for failure to observe a technicality" as a result of a defendant's actions. *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001).

Here, Plaintiff alleges no injury from his purported denial of access to the courts. For example, Plaintiff does not allege that he was unable to meet a deadline or communicate with court personnel as a result of Defendant's actions, nor does he allude to undesirable outcomes of any identified proceeding. As a result, the Court can find no indication that Plaintiff was prejudiced or his efforts frustrated, let alone at the hands of any employee of Defendant. Accordingly, Plaintiff's access-to-the-courts claim is dismissed.[3]

### 4. Religious Liberty Claims

The Court construes Plaintiff's Amended Complaint as asserting a claim under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see Salahuddin v.*

---

[3] To the extent the Amended Complaint raises a claim for inadequate processing of Plaintiff's grievances, (*see* Am. Compl. 3, 4 (alleging that Plaintiff's grievances were "rejected" and "given back to [him]")), such a claim would fail as a matter of law. The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of certain claims. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). However, because inmate grievance procedures created by state law are not required by the Constitution, "allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." *Shabazz v. Dzurenda*, No. 16-CV-62, 2016 WL 4203395, at *4 (D. Conn. Aug. 9, 2016) (internal quotation marks omitted). Where "prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 360 (N.D.N.Y. 2010) (internal quotation marks omitted). Accordingly, "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Id.* (internal quotation marks omitted); *see also Harris v. Westchester Cty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (holding that the "plaintiff[']s claim regarding [the] defendants' allegedly negligent mishandling of grievances cannot, as a matter of law, support a claim under [§] 1983"). Moreover, any claim that Plaintiff was deprived of his right to petition the government for redress is belied by the filing of this Action (and numerous other actions). *Cf. Harris*, 2008 WL 953616, at *5 ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by [the] plaintiff here: directly petitioning the government for redress of his claims.").

14

*Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).  A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system."  *Ford*, 352 F.3d at 588 (internal quotation marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (report and recommendation) (explaining that the right of inmates to freely exercise a chosen religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns").  Accordingly, a prisoner's free exercise claims are "judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights."  *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs."  *Washington*, 2015 WL 1439348, at *9 (alteration and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief." (alteration and internal quotation marks omitted)).[4]  In

---

[4] The Second Circuit recently explained that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Holland*, 758 F.3d at 220.  The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question.  *Id.* at 221.  Accordingly, this Court "will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid."  *Weathers*, 2014 WL 4810309, at *4; *see also Williams v. Fisher*, No. 11-CV-379, 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) (same).

determining whether a belief is "sincere," "an individual . . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (alteration and internal quotation marks omitted).  Moreover, "[a] substantial burden on religious exercise exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (internal quotation marks omitted).  The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593–94.  "Once [a] plaintiff establishes this burden, '[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (quoting *Salahuddin v. Goord*, 467 F.3d at 275).  The burden then shifts to the inmate "to show that these articulated concerns were irrational." *Salahuddin v. Goord*, 467 F.3d at 275 (alteration and internal quotation marks omitted).

RLUIPA, in turn, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion," *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005), and "provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest," *Holland*, 758 F.3d at 224 (alterations and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d at 273 ("RLUIPA protects inmates by

16

providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." (quoting 42 U.S.C. § 2000cc-1(a)) (footnote omitted)).  "Since substantial burden is a term of art in the Supreme Court's free exercise jurisprudence [the Second Circuit] assume[s] that Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it." *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007).[5]  Whether a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the Free Exercise Clause.  *See Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *12 (S.D.N.Y. Sept. 3, 2013) ("To state a claim under both the Free Exercise Clause of the First Amendment and RLUIPA, an inmate must first allege that the government imposed a 'substantial burden' on his religious exercise." (citing *Salahuddin v. Goord*, 467 F.3d at 274–75)), *adopted in relevant part by* 2014 WL 2767201 (S.D.N.Y. June 17, 2014); *Ramsey v. Goord*, 661 F. Supp. 2d 370, 395 n.12 (W.D.N.Y. 2009) (explaining that "the threshold inquiry of a religious freedom claim under both the First Amendment and the RLUIPA is the same"); *Pugh v. Goord*, 571 F. Supp. 2d 477, 504 (S.D.N.Y. 2008) (engaging in the same analysis for determining a plaintiff's sincerely held beliefs under both the RLUIPA and the Free Exercise Clause).  "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden

---

[5] As noted, a substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

imposed on religion is the least restrictive means of achieving that interest." *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (per curiam) (citing 42 U.S.C. § 2000cc-2(b)).

Defendant does not contest the sincerity of Plaintiff's religious beliefs. The Court, therefore, will assume for the purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held.

The Court turns, then, to whether Plaintiff has adequately alleged that his ability to exercise his religious beliefs was substantially burdened. Plaintiff asserts that he "was denied [his] right to observe the month of Ramadan in the facility" and denied the right to "pray[] and break[] . . . the fast for [his] Muslim religion on numerous different days due to being put on suicide watch." (Am. Compl. 3.) It is unclear how Defendant's alleged conduct—placing Plaintiff on suicide watch—burdened Plaintiff's ability to pray or fast. Without providing specific facts beyond the conclusory allegations in the Amended Complaint, Plaintiff fails to state a claim under the First Amendment. *See Twombly*, 550 U.S. at 555; *see also Shakur v. Graham*, No. 14-CV-427, 2015 WL 1968492, at *13 (N.D.N.Y. May 1, 2015) (dismissing the plaintiff's "conclusory allegation that [the defendants] violated his free exercise rights").

To the extent that Plaintiff raises a RLIUPA claim, this claim also fails. "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland*, 758 F.3d at 224 (citing *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam)); *see also Keitt v. Hawk*, No. 13-CV-850, 2015 WL 1246058, at *11 (N.D.N.Y. Jan. 8, 2015) (same). Instead, a plaintiff may only seek injunctive relief to redress a RLUIPA violation. *See Holland*, 758 F.3d at 224; *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes appropriate relief under RLUIPA." (internal quotation marks omitted)), *aff'd*, 694

18

F.3d 208 (2d Cir. 2012).  Here, Plaintiff requests "one quabillion dollars" in monetary damages, (Am. Compl. 5), which is an unavailable remedy.  *See Holland*, 758 F.3d at 224.  Defendant's Motion, therefore, is granted as to Plaintiff's claims under the First Amendment and RLUIPA.

### 5.  Dismissal With Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that he has inadequately or inartfully pleaded and that he should therefore be given a chance to reframe."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied."  *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).  Even a pro se plaintiff is not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile."  *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).  Courts are especially wary of giving a plaintiff multiple "bites at the apple" where—as is the case here—the plaintiff has already been granted leave to amend.  *See Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) ([The] [p]laintiff has already been given one opportunity to amend his complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity."); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp.

19

2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

Here, Plaintiff's original Complaint was dismissed on all grounds by Judge Preska, with leave to amend in a limited respect. (*See* Order To Amend.) Plaintiff did so, (*see* Am. Compl.), but failed to cure the deficiencies identified in the Order to Amend. Even when presented with specific instructions as to each defect, (*see* Order To Amend), Plaintiff has again failed to state a claim. Accordingly, the dismissal of the Amended Complaint is with prejudice. *See Al-Qadaffi*, 2015 WL 585801, at *3, 8 (dismissing amended complaint with prejudice following an order to amend issued by then-Chief Judge Preska); *Velez v. Hayes*, 346 F. Supp. 2d 557, 560 (S.D.N.Y. 2004) (dismissing amended complaint with prejudice "insofar as [the claims] merely repeat claims that [the] Chief Judge['s] Order had dismissed").

### III. Conclusion

For the foregoing reasons, the Motion is granted with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 27), and close the case.

SO ORDERED.

Dated: January 31, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

20